In the Matter of EASTMAN KODAK COMPANY, Petitioner, v. STATE TAX COMMISSION, Respondent.

Third Department, January 29, 1970.

*Bergreen & Bergreen* (*Morris H. Bergreen, Bernard D. Bergreen, Martin Blackman* and *Robert J. Feldman* of counsel), for petitioner.

*Louis J. Lefkowitz, Attorney-General* (*Vincent P. Molineaux* and *Ruth Kessler Toch* of counsel), for respondent.

HERLIHY, P. J.   The petitioner (taxpayer) contends that certain of its sales should be excluded from the sales receipts factor of the three fraction formula by which income of a foreign corporation doing business in this State, but dealing in interstate commerce is assigned to this State (Tax Law, § 210).*

---

* The pertinent provisions of section 210 (subd. 3, par. [a], subpar. [2]) of the Tax Law, in effect for the years 1961 through 1963 are:

"3. The portion of the entire net income of a taxpayer to be allocated within the state shall be determined as follows:

"(a) multiply its business income by a business allocation percentage to be determined by * * *

"(2) ascertaining the percentage which the receipts of the taxpayer, computed on the cash or accrual basis according to the method of accounting used in the computation of its entire net income, arising during such period from * * *

"(B) sales of its tangible personal property not located at the time of the receipt of or appropriation to the orders at any permanent or continuous place of business maintained by the taxpayer without the state where the orders were received or accepted within the state and where shipments are made to points within the state,

"(C) * * * sales of its tangible personal property (except sales described in clause B) located without the state at the time of the receipt of or appropriation to the orders where shipment is made to points within the state,

The applicable statutory language controlling the determination in the present case is as follows: "An order shall be deemed received or accepted within the state if it has been received or accepted by an employee, agent, agency or independent contractor chiefly situated at, connected with, by contract or otherwise, or sent out from a permanent or continuous place of business of the taxpayer within the state." (Tax Law, § 210, subd. 3, par. [a], subpar. [2], cl. [D].)

In order to determine the proportion of net income of a taxpayer attributable to New York, the statute contains a rather complex formula consisting of three fractions. This case is concerned with the receipts fraction. (See Tax Law, § 210, subd. 3, par. [a], subpar. [2], cl. [B].) In general the receipts fraction consists of receipts from sales of tangible personal property attributable to New York, plus receipts from services performed in New York plus receipts from rental of New York property (the numerator of the fraction) over the total receipts from sales service and rentals wherever attributable.

In the present case we are concerned with only one part of the numerator of the fraction, the part dealing with the sales of tangible personal property.

It should be noted that there are two different periods involved, 1957–1960, and 1961–1963. The statute was worded differently for the two periods, but the issue is the same under both versions of the statute.

In substance the formula states that sales of tangible personal property *not located in New York* at the time the order is made or received will be attributable to New York under certain circumstances (1) when the property is not located at the time

---

but only to the extent of fifty per centum of the receipts from the sales referred to in this clause,

" (D) sales of its tangible personal property not located at the time of the receipt of or appropriation to the orders at any permanent or continuous place of business maintained by the taxpayer without the state, where the orders were received or accepted within the state and where shipment is made between points outside the state, but only to the extent of fifty per centum of the receipts from the sales referred to in this clause. For purposes of this clause and clause B an order shall be deemed received or accepted within the state if it has been received, or accepted by an employee, agent, agency or independent contractor chiefly at, connected with, by contract or otherwise, or sent out from a permanent or continuous place of business of the taxpayer within the state, * * *

" (G) all other business receipts earned within the state, bear to the total amount of the taxpayer's receipts, similarly computed, arising during such period from all sales of its tangible personal property, services, rentals, royalties and all other business transactions, whether within or without the state."

The New York statute is affirmative while Massachusetts, Pennsylvania and other cited statutes relied upon by the petitioner are cast in negative terms.

of the receipt of the order at a permanent place of business maintained by the taxpayer outside the State and (2) where the orders are received or accepted within the State.

The relevant facts have been stipulated by the parties. During the years in question (1957–1963) W. J. German, Inc. (hereinafter referred to as German), incorporated in the States of Delaware and California, and the taxpayer entered into contracts whereby German acquired the exclusive right to sell and distribute unexposed professional motion picture film manufactured by the taxpayer in New York State. German maintained sales offices in New Jersey, Cailfornia and Illinois and inventories of film were forwarded on consignment by the taxpayer to German to be stored in warehouses owned by German outside of New York State. The shipment of film being on consignment, title thereto remained in the taxpayer until there was an actual sale thereof by German. German had virtually absolute control over all sales activities including salesmen (all of whom were German's employees), and the manner and method of payment by customers. Upon making a sale and withdrawing film from the inventory, German was obligated to remit the net sales price less its commissions to the taxpayer by the end of the week in which such transaction occurred. The taxpayer as a practical matter had no control over the manner and method in which German performed its business of obtaining and consummating sales of the taxpayer's product. It is not subject to dispute that German's connection with the taxpayer by the contracts and by the performance thereof was exclusively with the taxpayer's Rochester office and to a minimal extent with the taxpayer's New York City office.

The issues raised in the present case are: (I) whether or not sales of the petitioner's goods located outside the State of New York at the time of sale are properly deemed attributable to this State pursuant to the Tax Law as quoted hereinabove, and (II) whether or not the inclusion of the sales in the numerator of the New York formula results in an unconstitutional double taxation.

I. The determination of the respondent that the sales made by German outside the State of New York are to be included in the numerator of the New York State formula was proper.

The connection required to be ascertained by the New York statute is not whether there was a connection of those who made sales outside New York with the premises of the independent contractor (sales office), but whether there was a connection with that of the taxpayer. Orders are to be deemed accepted in New York if accepted by an independent contractor chiefly

connected with, by contract or otherwise, a permanent place of business of the taxpayer within this State. It is undisputed that the orders were accepted by German and that German was an independent contractor of taxpayer. It is also undisputed that taxpayer has a permanent place of business within this State in the City of Rochester and that the contract between German and taxpayer was made there. There were also other connections between German and taxpayer's Rochester office and these are not disputed. There is no contention that German is also connected with an out-of-State Kodak office. It seems clear, therefore, that the independent contractor, German, is chiefly connected with, by contract, the taxpayer's Rochester, New York office. Under the statute, therefore, sales accepted by German are deemed to be accepted in the State as they are not connected with any out-of-State office of the taxpayer. Thus the assessments were properly made.

In *Commonwealth* v. *General Foods Corp.* (429 Pa. 266, 280) the court noted: "An independent agent or broker * * * may be connected with an office of a taxpayer; if so, the receipts attributable to him are allocated to that office." There being no office, actual or imputed, of the taxpayer outside the State of New York to which these sales of its product can be allocated, it would appear reasonable to consider the sales as being the result of the taxpayer's New York corporate activities. Upon the present record in its entirety we cannot say that as a matter of law the commission erred in finding upon the facts that the independent contractor (German) was chiefly connected by contract with the taxpayer's place of business in New York State, there being no other office of the taxpayer, actual or imputed, with which the independent contractor had any connection.

II. The inclusion of the orders received by German for petitioner's products outside of the State of New York in the numerator of the tax formula under consideration herein is not unconstitutional.

It might be well to state some of the basic rules underlying a State's taxation of income when the taxpayer is engaged in interstate commerce. These rules are stated and restated in *Northwestern Cement Co.* v. *Minnesota* (358 U. S. 450): net income from the interstate operations of a foreign corporation may be subjected to State taxation provided the levy is not discriminatory and is properly apportioned to local activities within the taxing State forming sufficient nexus to support the same. A net income tax on revenues derived from interstate commerce does not offend constitutional limitations upon State

interference with such commerce. The entire net income of a corporation, generated by interstate as well as intrastate activities, may be fairly apportioned among the States for tax purposes by formulas utilizing in-State aspects of interstate affairs. The Due Process Clause will not be contravened if the taxes imposed are levied only on that portion of the taxpayer's net income which arises from its activities within the taxing State. These activities form a sufficient " ' nexus between such a tax and transactions within a state for which the tax is an exaction.' " (*Northwestern Cement Co., supra*, p. 464.)

It is true, as taxpayer argues, that an apportionment formula will not be upheld if the formula is intrinsically arbitrary or if it reaches an unreasonable result in a particular case (*Hans Rees' Sons* v. *North Carolina*, 283 U. S. 123). However, one who attacks a formula of apportionment carries a distinct burden of showing by clear and cogent evidence that it results in extraterritorial values being taxed (*Butler Bros.* v. *McColgan*, 315 U. S. 501).

In the *Hans Rees' Sons* case, the taxpayer was able to show that its income attributable to North Carolina was out of all appropriate proportion to the business transacted by the taxpayer in that State. It did this by showing that the percentage of income attributable to North Carolina was 27.1% whereas North Carolina was taxing 80% of the taxpayer's income.

Essentially, taxpayer's constitutional argument fails because there has been no similar proof in the present case.

It may be said that the formula involved in the present case is not intrinsically arbitrary. Thus the only question is whether its application has reached an unreasonable result. It bears repeating that the taxpayer has the burden of proof, by clear and cogent evidence, that the result is unreasonable.

We are, of course, among other matters, concerned with sales activity in the present case. The Tax Commission is in effect saying that all of taxpayer's sales activities are in New York. Taxpayer is saying that none of the selling activity took place in New York. " The evidence here clearly shows that the selling activity took place in New Jersey, Illinois and California, where W. J. German, Inc.'s personnel, buildings and other assets were located." (Kodak's brief, p. 51).

By " sales activity ", we are not considering literal selling activity, but any corporate activity relating to sales. Thus the drafting and negotiation of the contract between German and taxpayer, which took place in New York, were part of the corporate sales activity. All transactions between personnel of taxpayer in Rochester and personnel of German in the course

of the contract are part of taxpayer's corporate sales activity. The hiring of an independent accounting firm by taxpayer in New York to check the inventory of German can be considered a corporate sales activity of taxpayer in New York. These examples show that there was corporate sales activity of taxpayer in New York independent of selling activity of German outside New York.

It is only the taxpayer's sales activity with which we are concerned. We need not attribute German's activity to the taxpayer for purposes of determining what portion of the taxpayer's sales activity is being carried on in New York as opposed to its sales activity everywhere. Upon the record in its entirety it does not appear that New York State is attempting to reach the sales activity of the petitioner outside of this State.

However, it is asserted and the record seems to bear out that taxpayer is paying a franchise tax of 133% on a part of its income. The reason seems to be that California, New Jersey and Illinois are levying a franchise tax on taxpayer for its activity in those States. The record does not make completely clear the basis of the tax in each instance, but some taxing criteria are clear. In New Jersey, for example, 100% of sales are taxed when the goods are delivered in New Jersey from inventory in New Jersey. Fifty per cent of sales delivered out of New Jersey from inventory in New Jersey are taxed when the sales are through German. All other sales from locations in New Jersey (by German) are taxed 50%.

It might be well to understand that we are dealing here with a franchise tax which in theory is based on corporate activity in the *taxing State*; we are not dealing with a *sales tax* or *income tax*.

As was pointed out in *Northwestern Cement Co.* (358 U. S. 450, *supra*), logically it is impossible, when the tax is fairly apportioned, to have the same income taxed twice. In practical operation, however, apportionment formulas being what they are, the possibility of the contrary is not foreclosed, especially by levies in domiciliary States. The court went on to say that the question was not before them, as there was nothing to show multiple taxation was present. The court indicated, however, that even a showing of multiple taxation would not be enough to invalidate the tax under review by citing *Northwest Airlines* v. *Minnesota* (322 U. S. 292).

In the present case, based on the assumptions made and upon the present record, it cannot be said that it is New York's formula that is unreasonable in application.

The determination appealed from should be confirmed with costs to the respondent.

STALEY, JR., GREENBLOTT, COOKE and SWEENEY, JJ., concur.

Determination confirmed, with costs to respondent.